IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE: | * | |
| | * | CASE NO. 10-34611-JFS |
| EMPIRE TOWERS CORPORATION, | * | (Chapter 7) |
| | * | |
| Debtor. | * | |
| ********************************** | * | |
| | * | |
| JOSEPH J. BELLINGER, TRUSTEE, | * | |
| | * | |
| Plaintiff, | * | Adversary No.  12-00713-JFS |
| v. | * | |
| | * | |
| THE BANK OF GLEN BURNIE, | * | |
| | * | |
| and | * | |
| | * | |
| EMPIRE CORPORATION, | * | |
| | * | |
| Defendants. | * | |

**************************************************************************

<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

The Bank of Glen Burnie ("BGB"), by its attorney William M. Rudow and the Rudow
Law Group, LLC, hereby moves for the entry of an Order dismissing the Complaint to Recover
Fraudulent Conveyances [DE 112], as amended by that Amended Complaint to Recover
Fraudulent Conveyances [DE 15], (collectively, "Complaint"), filed by Joseph J. Bellinger,
Trustee ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(c), and Fed. R. Civ.
P. 12(d), made applicable herein by Fed. R. Bankr. P. 7012. In support of its request, BGB states
as follows:

<u>INTRODUCTION</u>

This Court should dismiss Counts II, IV, VI and VIII of the Complaint.  In each of these
Counts, the Plaintiff seeks to recover pre-petition payments made to BGB, not directly by the
debtor Empire Towers Corporation ("Debtor"), but by a separate entity, Defendant Empire

Corporation ("Empire Corporation").  The Plaintiff alleges that prior to the Debtor filing its bankruptcy petition, an individual who was an owner and principal of the Debtor fraudulently diverted funds meant for the Debtor to Empire Corporation, which funds were deposited into Empire Corporation's account.  The Plaintiff contends that Empire Corporation then exercised dominion and control over the "Rents" by using these pre-petition funds in its sole discretion to satisfy its liabilities, which included making payments to third parties.  One of those third parties was BGB, who received payments from Empire Corporation, some of which were more than one year prior to Debtor's filing of its bankruptcy petition.

Plaintiff now seeks to recover the pre-petition payments made by Empire Corporation to BGB based upon theories of fraudulent conveyance. However, the Plaintiff does not allege any contractual relationship between the Debtor and BGB. The Complaint also contains no factual allegations disputing that BGB, as a subsequent transferee, accepted payment from Empire Corporation, the initial transferee, for value, in good faith, and without knowledge of the voidability of the transfer sought to be avoided. As a result, each and every one of Plaintiff's claims against BGB are barred by 11 U.S.C. § 550(b)(1) and the Complaint should be dismissed for Plaintiff's failure to state a cause of action under Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(c), and Fed. R. Civ. P. 12(d).

## FACTS

Plaintiff alleges that Wilfred T. Azar, III ("Azar") was an owner (directly or indirectly) and principal of the Debtor and Empire Corporation.  Complaint ¶ 5.  Plaintiff contends that the Debtor owned real property located at 7300 and 7310 Governor Ritchie Highway, Glen Burnie, MD 21061 ("Property"), and leased office and retail space to various tenants for specific annual rent amounts payable to the Debtor in monthly installments, including other of the Debtor's

income is defined as "Rent."  Complaint ¶¶ 12, 17, 21 & 23.  Plaintiff claims that Azar directed tenants of the Property to make pre-petition payments of Rent directly to Empire Corporation, *...which deposited the Rents into its own account.*  Complaint ¶ 23.  Plaintiff contends that Empire Corporation had no agreement with the Debtor to receive and retain the pre-petition Rents, or to use the Rents to pay its liabilities.  Complaint ¶ 24.  However, Plaintiff alleges that Empire Corporation did just that by retaining *some of the Rents for its own use, and transferred some of the Rents to third parties.*  Complaint ¶ 26.  Plaintiff contends that BGB was one of those third parties and that, *Empire Corporation and the Defendant [BGB] are transferees of such Rents and are not entitled to retain the Rents.*  Complaint ¶ 28.  Plaintiff claims that Empire Corporation made pre-petition payments to BGB out of its own account as identified on Complaint Exhibit 1 [DE 112-1].  Plaintiff's Complaint does not allege that BGB received these payments for no value.

Empire Corporation is a separate legal entity from the Debtor.  Empire Corporation is not in bankruptcy.  Complaint ¶ 12.  Empire Corporation owns 500 and 502 Crain Highway, Glen Burnie, MD 21061[1] ("Empire Corporation Property") from which it derives rent from its long time tenant, Enterprise Leasing Company of Baltimore.[2]

BGB made a loan[3] to Empire Corporation ("BGB Loan") to finance income producing commercial real property - Empire Corporation Property - which was secured, in part by a deed

---

[1] See Movant Exhibit 1 – SDAT Printout re: 500 Crain Highway.  See also Movant's Exhibit 2 – SDAT Printout re: 502 Crain Highway.
[2] See Movant Exhibit 3 – Lease Agreement, dated April 16, 1993, between Empire Corporation as lessor and Enterprise Leasing Company of Baltimore, as lessee.  And see Movant Exhibit 4 – Lease Addendum # 3.
[3] See Movant Exhibit 5 – Promissory Note ("Note"), dated 02-28-2005 in the original principal amount of $1,200,000.00, between BGB as lender and Empire Corporation as borrower.

of trust on said real property.[4]   The BGB Loan is also secured by, inter alia, two (2) assignment of rents generated by the Empire Corporation Property.[5]   Upon information and belief, Empire Corporation uses the rent collected from the Empire Corporation Property to pay the BGB funds for repayment of the BGB Loan.  The Complaint makes no allegation that Empire Corporation does not use the rent collected from the Empire Corporation Property to pay the BGB funds for repayment of the BGB Loan.

On October 27, 2010 ("Petition Date"), more than 5 months after the last payment from Empire Corporation to BGB, the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code, commencing the above captioned case number 10-34611 ("Empire Towers Case").  Complaint ¶ 7.  Plaintiff was appointed Chapter 11 Trustee and on a Motion to Convert by the United States Trustee, this Court converted the Empire Towers Case to Chapter 7.  Complaint ¶ 8.  On October 25, 2012, Plaintiff filed the Complaint in the Empire Towers Case, commencing the instant adversary proceeding against BGB and Empire Corporation.

In the Complaint, Plaintiff alleges four (4) causes of action against BGB: Count II for fraudulent conveyance under 11 U.S.C. § 548(a)(1)(A); Count IV for fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B); Count VI for fraudulent conveyance under Maryland's Fraudulent Conveyance Act (Md. Code Ann. Com. Law §§ 15-204 – 15-207) through 11 U.S.C. § 544; and Count VIII for turnover to avoid transfer under 11 U.S.C. § 550.

---

[4] See Movant Exhibit 6 – Deed of Trust in which Empire Corporation granted a security interest in 500 and 502 Crain Highway in favor of BGB to secure payment of the Note, as recorded in the Land Records of Anne Arundel County, Maryland in Book 16014, Pages 0742, et seq. on March 4, 2005.
[5] See Movant Exhibit 7 – Assignment of Rents.  See also Movant Exhibit 6.

<u>L</u>AW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the legal sufficiency of a complaint." <u>Green v. Hebron Sav. Bank</u>, 2010 WL 118370 at *2 (D. Md. 2010). Dismissal is appropriate unless the plaintiff provides *enough facts to state a claim for relief that is plausible on its face.* <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 547 (2007). This *plausibility standard requires that the pleader show more than a sheer possibility of success* and requires the court to *draw on its judicial experience and common sense to determine whether the pleader has stated a plausible claim for relief.* <u>Green</u>, 2010 WL 119370 at *2 (citing and quoting <u>Ashcroft v. Iqbal</u>, 12 S.Ct. 1937, 1949 (2009). Indeed *threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.* <u>Id</u>. quoting <u>Iqbal</u> at 1949.

<u>A</u>RGUMENT

**I. Plaintiff's Claims Against BGB Are Barred By 11 U.S.C. § 550(b)(1).**

BGB's status under the Bankruptcy Code and as alleged in the Complaint with respect to the alleged fraudulent transfers in this action was as the mediate or subsequent transferee of Empire Corporation that took for value, in good faith, and without knowledge of the voidability of the transfers sought to be avoided. The facts alleged in the Complaint clearly establish that Empire Corporation was the initial transferee of the transfers the Plaintiff seeks to avoid and recover. As a result, 11 U.S.C. § 550(b)(1) prevents Plaintiff from recovering any amounts from BGB and each Count against BGB must be dismissed for failure to state a claim.

Plaintiff bases Counts II and IV on the following portions of § 548 of the Bankruptcy Code, which permits a trustee to avoid any transfer if the debtor voluntarily or involuntarily:

*(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or*

*(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation;*
*(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.*

11 U.S.C. § 548(a)(1)(A) and (B)(ii) and (ii).

In Count VI, Plaintiff seeks relief pursuant to § 544 of the Bankruptcy Code, which permits a trustee to *avoid any transfer of an interest of the debtor in property... that is voidable under applicable law by a creditor holding an unsecured claim ....* 11 U.S.C. § 544(b).  In its Complaint, the Plaintiff is asserting a claim under Maryland's Fraudulent Conveyance Act. Lastly, in Count VIII, Plaintiff seeks to recover avoidable property, or the value of such avoidable property, from *the initial transferee* or *any immediate or mediate [i.e., subsequent] transferee of such initial transferee.* 11 U.S.C. § 550(a)(1) and (2).

> *A trustee has an absolute right to recover from the initial transferee under § 550(a)(1). Any immediate or mediate transferee of the initial transferee, however, has an affirmative defense to recovery if such transferee 'takes for value, ... in good faith, and without knowledge of the voidability of the transfer avoided ....*

<u>In re Walter Nieves</u>, 648 F.3d 232, 237 (4th Cir.2011) (*quoting* 11 U.S.C. § 550(b)(1)).

The immediate or mediate transferee has an affirmative defense not only to claims brought under § 550, but also to the extent that a transfer is avoided under §§ 544 or 548.  11 U.S.C. § 550(b)(1).  Because BGB is an immediate or mediate transferee of Empire Corporation, the initial transferee, BGB has an affirmative defense to every count against it and the Plaintiff is barred from seeking recovery from BGB.

**A. BGB Is An Immediate Or Mediate Transferee Under 11 U.S.C. § 550(a)(2)**.

In order to analyze the application of the affirmative defense provided in § 550(b)(1), this Court must first determine BGB's status under 11 U.S.C. § 550(a)(2) as it relates to the alleged fraudulent transfers.

> *Thus, to determine whether the trustee may recover a conveyance, the court must discern whether the entity from whom recovery is sought is the conduit, initial transferee or subsequent, good faith transferee for value without knowledge of the voidability of the transfer. The distinctions are crucial to recovery, since the trustee cannot recover from either the conduit or the subsequent, good faith transferee for value.*

In re Hooker Investments, Inc., 155 B.R. 332, 337- 338 (Bankr.S.D.N.Y.1993) (citations omitted).

The factual allegations of the Complaint establish that there was no conduit and BGB was a subsequent good faith transferee for value.  In fact, BGB reasonably believed that the source of the payments was income derived from the lease to Enterprise in which BGB held a perfected interest via two assignments of rents.[6]  Not one factual allegation states BGB received any transfer lacking good faith, lacking for value or with knowledge of the voidability of the transfer. The opposite is true.  The facts as alleged are that BGB received payments from Empire Towers - *27. Empire Corp. transferred some of the Rents to the Defendant*.  Complaint ¶ 27.  Azar, not BGB, is alleged to have transferred the Rent, as to Count II, *with the intent to hinder, delay or defraud the creditors of the Debtor*.  Complaint ¶ 37.  The Debtor was alleged, as to Count IV, to *received less than reasonably equivalent value in exchange for the transfer of the Rent Proceeds to the Defendant*.  Complaint ¶ 45.

Only Count VIII mentions BGB, with no factual support and for the first time, alleges as a statement of law that BGB was the initial transferee and Empire Corporation was a conduit.

---

[6] See Movant Exhibits 6.  See also Movant Exhibit 7.  See also that BGB affidavit, Movant Exhibit 8.

Complaint ¶ 64.  Therefore, the source of Plaintiff's potential recovery is limited to Empire Corporation as the initial transferee of the alleged fraudulent transfer of the Rents.

It is true that the Fourth Circuit has held that the initial transferee is not always the initial recipient and that a party cannot be an initial transferee if he is a mere conduit for the party who had a direct business relationship with the debtor. See In re Columbia Data Products, Inc., 892 F.2d 26, 28 (4th Cir.1989).  However, the Court noted that one distinguishing factor of a conduit is that, *the initial recipient was a conduit because the funds ultimately went to the party with whom the debtor had a business relationship.* Id. (citing In re Fabric Buys of Jericho, Inc., 33 B.R. 334, 337 (Bankr.S.D.N.Y.1983)).   In this case, there are no allegations that BGB had a direct business relationship with the Debtor or that BGB was a creditor of the Debtor.

The Fourth Circuit has adopted a *dominion and control* test to determine whether a party is considered an initial transferee. See In re Southeast Hotel Properties L.P., 99 F.3d 151 (4th Cir.1996).  Under this test, *the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes.* Id. at 154 (quoting Bonded Fin. Serv., Inc. v. European Am. Bank, 838 F.2d 890, 894 (7th Cir.1988)).  The Court further held that, *this test requires that in order to constitute the 'initial transferee' of property under § 550(a) of the Bankruptcy Code, a person or entity must have exercised legal dominion and control over the property.* Id. at 156.

Applying the *dominion and control* test to the facts of this case, Empire Corporation was the initial transferee of the Rents that were the alleged property of Debtor.  Plaintiff alleges that Azar directed tenants to pay pre-petition Rent intended for Debtor directly to Empire Corporation.  Complaint ¶¶ 22 - 23.  Empire Corporation then deposited the Rents into its own account and used the Rents to pay its liabilities.  Complaint ¶¶ 23, 26.  Empire Corporation's

payments to third parties, including BGB, came directly out of its own account.  Complaint ¶¶ 26 – 27 and 29.  These factual allegations establish that once the Rents were deposited into its account, Empire Corporation exercised legal dominion and control over the Rents.

Empire Corporation was not a mere conduit, but an initial transferee.  For instance, Empire Corporation was not acting as an agent or in a representative capacity for another party when issuing the check(s) identified on Complaint Exhibit 1 ("Checks").  See In re Southeast Hotel Properties L.P., 99 F.3d 151 at 155 (4th Cir.1996).

The Fourth Circuit's decision in In re Columbia Data Products, Inc., *supra,* is instructive on the determination of an initial transferee.  In that case, the debtor Columbia Data Products ("CDP") entered into an agreement with several creditors, including Logan Circuits, Inc. ("Logan").  In re Columbia Data Products, Inc., 892 F.2d at 27.  Under an agreement, CDP made payments to a creditor's committee, who would then redistribute the funds to CDP's creditors. Id.  Logan received two checks from the committee and deposited these funds into its account. The money was then automatically transferred from Logan's account to one of its creditors, Security Pacific Business Credit, Inc. ("Security Pacific").  Id.  Subsequently, CDP filed a voluntary petition for bankruptcy under Chapter 11, which it later converted into a Chapter 7 petition. Id.  The trustee filed a complaint against Security Pacific seeking to recover the money it had received from Logan.  Id.

The Fourth Circuit affirmed the district court's holding that Security Pacific was not the initial transferee of the transfer from CDP.  Id. at 29.  In reaching its decision, the Fourth Circuit stated, *[b]ecause Logan, not Security Pacific, had the direct business relationship with CDP and because Logan used the funds for its own purpose, we affirm the holding of the district court that Security Pacific was not the initial transferee of the transfer from CDP.*  Id.

Likewise, in the present case, because BGB had no direct business relationship with the Debtor and because Empire Corporation used the Rents for its own purpose,[7] Empire Corporation, not BGB, was the initial transferee of the transfers from the Debtor.  BGB was not a conduit in the alleged fraudulent transfers and the legal allegation stated in Count VIII Complaint ¶ 64 is wrong.

**B. BGB Satisfies the Requirements Of 11 U.S.C. § 550(b)(1) To Prevent Recovery By Plaintiff From An Immediate Or Mediate Transferee.**

Because BGB satisfies the conditions of 11 U.S.C. § 550(a)(2) for an immediate or mediate transferee of Empire Corporation, the initial transferee, this Court must determine whether BGB meets § 550(b)(1)'s two prong requirements of *good faith* and *without knowledge* to bar recovery by the Plaintiff.  Based upon the facts as alleged in the Complaint, BGB meets these requirements.

The Fourth Circuit has explained that under § 550(b)(1), the requirement of knowledge is, *actual knowledge of facts that would lead a reasonable person to believe that the transferred property was voidable is all that is required to show knowledge.*  In re Walter Nieves, 648 F.3d at 238.  In this case, the Complaint alleges that Empire Corporation, not the Debtor, made payments to BGB from its own account more than five (5) months before the Petition Date. Complaint ¶¶ 23 and 29.  There are no allegations that Empire Corporation's payments to BGB were made for no value, and no claim that BGB had any relationship with Debtor.  Additionally, as alleged by Plaintiff, Empire Corporation has never filed a bankruptcy proceeding.  Complaint ¶ 12.

---

[7] Empire Corporation used the Rent to reduce the BGB Loan owed by Empire Corporation and memorialized in Movant's Exhibit 5.

Based upon the facts alleged in the Complaint, it is clear that, as alleged, BGB had no actual knowledge of facts that would lead a reasonable person to believe that the transfers from Empire Corporation were voidable. See Id. at 241. To the contrary, owing funds on a $1,200,000 loan[8] secured by two (2) rent assignments,[9] BGB had every reason to believe that the transfers from Empire Corporation were funded by the lease[10] proceeds and absolutely no reason to believe that the transfers resulted from Debtor's funds.

To address the good faith prong of this analysis, the Fourth Circuit has applied an objective standard to the defense available to immediate and mediate transferees in § 550(b)(1).

> *We therefore arrive at the conclusion that the objective good-faith standard probes what the transferee knew or should have known, see Laines, 352 B.R. at 406, taking into consideration the customary practices of the industry in which the transferee operates. Id. at 239-240. However, there is no 'duty to investigate, to be a monitor for creditors' benefit when nothing known so far suggests that there is a fraudulent conveyance in the chain.'*

Id. at 238 (quoting In re Bressman, 327 F.3d 229 (3rd Cir.2003) (citing Smith v. Mixon, 788 F.2d 229, 232 (4th Cir.1986)).

As stated above, there are no facts alleged in the Complaint establishing that BGB knew or should have known that the payments it received from Empire Corporation could have been the result of a fraudulent conveyance. To the contrary, the BGB Loan was used to purchase income producing commercial real property – the Empire Corporation Property and was secured by an assignment of those rents. The BGB had every reason to believe that the payments it received from Empire Corporation were derived from the Empire Corporation Property and the Plaintiff does not make any allegations denying this in the Complaint.

The defense of 11 U.S.C. § 550(b)(1) applies to all of Plaintiff's claims against BGB because, based upon the facts alleged, BGB satisfies the *good faith* and *without knowledge*

---

[8] See Movant's Exhibit 5.
[9] See Movant Exhibit 7 – Assignment of Rents. And see Movant Exhibit 6.
[10] See Movant Exhibit 3.

requirements.  BGB clearly received the payments from Empire Corporation for value and was unaware that it was accepting payments that might be subject to a subsequent avoidance proceeding in bankruptcy.  There are also no facts as alleged that BGB acted in any manner other than in good faith.  As a result, the affirmative defense of § 550 (b)(1) is applicable and the Complaint should be dismissed in its entirety as to BGB.

**II. Count IV Fails Because Any Alleged Estate Funds May Have Been Co-Mingled with Non-Estate Funds Making it Impossible to Determine Which Funds Were the Debtor's Funds.**

In Simmons v. Lennon, 139 Md.App. 15, 32, 773 A.2d 1064, 1074 (2001) citing Lyxell v. Vautrin, 604 F.2d 18, 21 (5th Cir.1979), applying Alabama law, the Court held: *When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.* Part of the rationale is that the funds lose their specific identity when co-mingled with other funds.

By analogy, so long as the Empire Corporation bank account contained any funds that were not the Debtor's funds, it is impossible to determine which of the Debtor's funds, if any, were used to issue the Checks.  For instance, the Complaint does not specify how the court should look at the funds used to pay the Checks:  first in first out, last in last out, first in last out, or last in first out?  The Plaintiff has not alleged in the Complaint how this analysis should occur. While the Plaintiff did allege that the Debtor's funds were used to pay the Checks, the Plaintiff did not allege that the Debtor's funds were exclusively used to fund the Checks or that Empire Corporation's account consisted exclusively of the Debtor's funds.

CONCLUSION

For the foregoing reasons, BGB respectfully requests that this Court enter an order: (a) dismissing the Complaint in its entirety as against BGB; and (b) granting such other and further relief as is just and equitable.

/S/ William M; Rudow

William M. Rudow, Esquire

Federal Bar Number:  09937

bankruptcynotice@rudowlaw.com

Rudow Law Group, LLC

5603 Newbury Street

Baltimore, MD  21209

(410) 542-6000

*Attorney for the Movant,*

*The Bank of Glen Burnie*
